```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

LYNN BALDONI,                .    Case No. 3:01-CV-02205
                             .    (PCD)
          Plaintiff,         .
                             .    New Haven, Connecticut
     v.                      .    May 26, 2004
                             .
CITY OF MIDDLETOWN, ET AL.,  .
                             .
          Defendants,        .
. . . . . . . . . . . .
```

             SHOW CAUSE HEARING
     BEFORE THE HONORABLE PETER C. DORSEY
      SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        Brewer & O'Neil
                          By: ALYSSA S. VIGUE, ESQ.
                          818 Farmington Avenue
                          West Hartford, CT 06119

For the Defendants:       Halloran & Sage
                          By: JAMES. M. SCONZO, ESQ.
                          One Goodwin Square
                          225 Asylum Street
                          Hartford, CT 06103

                          City Attorney's Office
                          City of Middletown
                          By: TRINA SOLECKI-
                              AUCAIGNE, ESQ.
                          245 Dekoven Drive
                          Middletown, CT 06457


Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

Baldoni has been harassed since that order has been filed.

THE COURT: Well, I'm not exactly sure what has taken place. Somewhere, I think somebody provided me with a copy of a newspaper article, which is the only thing I know about it, and that is that, if I understand correctly, the town's legislative counsel has questioned the mayor's authority to have entered into the consent decree, and incipiently has suggested, or has perhaps taken some steps to either foretell or prevent the accomplishment of the settlement.

MR. SCONZO: If I may, Your Honor?

THE COURT: Yes, go ahead, Mr. Sconzo.

UNIDENTIFIED SPEAKER: Your Honor, may I just ask for the appearances of counsel?

THE COURT: I'm sorry?

UNIDENTIFIED SPEAKER: May I ask at least that the appearances of counsel be reflected on the record?

THE COURT: Yeah. All right. Okay.

MS. VIGUE: Alyssa Vigue, it's V-i-g-u-e, for the plaintiff (inaudible).

MR. SCONZO: James Sconzo for the City of Middletown, the Mayor of Middletown and the Chief of Police of Middletown.

1          THE COURT: No. No. How has it been
2  concluded, Mr. Sconzo?
3          MR. SCONZO: It has been concluded with a
4  acknowledgment that the mayor had the authority and
5  that the City is prepared to move forward with the
6  consent order, as signed by Your Honor, and I support
7  that contention by the facts that the money has been
8  appropriated, Your Honor, a resolution has been drafted
9  and approved, Your Honor, and a draft contract is in
10 circulation right now.
11         So, the City has taken every material step
12 necessary to be in compliance with Your Honor's order
13 and with the material terms of the settlement.
14         THE COURT: Now, you say the funds have been
15 appropriated.
16         MR. SCONZO: Correct.
17         THE COURT: Is this -- You're talking about
18 funds to pay this -- the salary and the compensation
19 package, I take it, of the new position?
20         MR. SCONZO: That's correct, Your Honor.
21         THE COURT: Is that --
22         MR. SCONZO: The budget was approved and --
23         THE COURT: It's the budget for a fiscal
24 year?
25         MR. SCONZO: Yes, it is.

1  one of your associates, has communicated to the
2  council, to the effect that what the mayor did with
3  respect to the consent order settling the case with Ms.
4  Baldoni, was within his lawful authority to do?
5       MR. RYAN:  Yes, Your Honor.
6       The town council, rightfully so, tried to
7  carry out their function, which is different from that
8  of the mayor.  They're the -- of course, the
9  legislative body, sought from me a legal opinion as to
10 whether or not the mayor had the authority.
11      They also, since there was an opinion
12 rendered by Attorney Sconzo on that issue, which was
13 available to the common council, they also wanted me --
14 an independent position or opinion from someone who
15 does a lot more federal court work than I do, and the
16 common council selected Attorney Scott Karsten for that
17 role.
18      He rendered an opinion which, after his
19 opinion, the issue of whether or not the mayor had the
20 authority became moot, and it must be stressed, Your
21 Honor, that the common council, the legislative body,
22 did absolutely nothing at all to violate the consent
23 order except to, as they should have, question whether
24 or not the mayor had the authority, and it's already --
25      THE COURT:  So, in other words, for all -- as

1  far as you're concerned, as Mr. Sconzo has suggested,
2  the City is in position with full authority, both as
3  far as the position itself is concerned, and the
4  compensation --
5      MR. RYAN:  Absolutely.
6      THE COURT:  -- to go forward with the consent
7  decree?
8      MR. RYAN:  Absolutely correct, Your Honor,
9  and as Attorney Sconzo pointed out, the common council
10 ordinance study committee has already approved the new
11 ordinance creating the second deputy chief's position.
12     THE COURT:  Okay.
13     MR. RYAN:  So our position, just to summarize
14 quickly, Your Honor, is that the City, including the
15 common council, is in full compliance with your consent
16 judgment, whereas the plaintiff is clearly in violation
17 of paragraph 6, which specified that the plaintiff was
18 prohibited from filing, commencing or maintaining any
19 other action, complaint, so forth, against the City.
20 That certainly was flagrantly violated by the filing of
21 Baldoni 2.
22     Furthermore, Your Honor, paragraph 8, wherein
23 the plaintiff was supposed to provide to the City, a
24 release of all claims, instead of doing that the
25 plaintiff supplied the City with a second lawsuit.

THE COURT: Well, she wanted to give you something to do, Mr. Ryan, to keep you out of trouble and keep you off the street.

MR. RYAN: She certainly has, Your Honor.

THE COURT: What else?

MS. VIGUE: For one, this suit has nothing to do with the original claim. This is the claim of ongoing hostile work environment, intimidation, retaliation due to the first lawsuit filed, and sexual harassment that's going on now.

Furthermore, this consent order, it says that she should not (inaudible) bring claims which she could have done earlier. These claims were not happening until after the consent order was filed.

THE COURT: Let me ask you this question.

Ms. Baldoni is going to be a deputy chief as of July 1?

MS. VIGUE: Correct.

THE COURT: Any dispute about that?

MS. VIGUE: No.

THE COURT: She's got to work within the department. It may well be that her ascension to the position of deputy chief, particularly having come after a lawsuit, and I say that very advisedly because it may very well be viewed, by virtue of the fact of a

know what her claim is, but it seems to me that maybe she's got to grin and bear a little bit. How much? I don't know. I'm not suggesting that she tolerate and swallow and accept gross misbehavior directed at her because of her gender, not by a long shot, that's contrary to the law and she doesn't have to put up with it, but on the other hand, maybe there's got to be some way of her maintaining her dignity and her rights, but -- as opposed to the sledge hammer of the lawsuit catching the City of Middletown in perhaps a somewhat difficult position where, in good faith, as the consent decree suggests, it is prepared to go forward with her, recognizing her professional stature and competence, but at the same time perhaps having a few sour apples somewhere within the employment of the police department, or other departments that may be involved, I don't know, and perhaps what needs to be done is a little bit of give and take that would recognize her dignity and her entitlement to indiscriminate treatment, and maybe it requires, on the part of the City, starting with the chief, and perhaps in conjunction with the -- Is there a union in the police force?

MS. VIGUE: The (inaudible) chief does not have the union as part of the grievance --

1  material breach of the agreement, the order, that is in
2  question at this time.
3         THE COURT: Well, the explanation that what's
4  involved in the second lawsuit postdates the consent
5  order, Mr. --
6         MR. KARSTEN: Actually, Your Honor, the
7  complaint itself reflects that. A portion of the cause
8  of action set forth in the second complaint is that the
9  City of Middletown has refused (inaudible) council
10 members have refused to (inaudible) --
11        THE COURT: Well, at some point in time, if I
12 understand correctly, at least incipiently, that was
13 suggested to be a possibility, as far as the, what you
14 call it is "concerned."
15        Frankly, in that respect, I would regard the
16 second lawsuit not as a violation of the consent order,
17 necessarily, but a somewhat premature jumping on the
18 bandwagon, because as I said before, that the -- there
19 was reserved to the plaintiff, the opportunity to come
20 back, reopen the first case in order to enforce the
21 consent order, so that from that point of view the
22 second lawsuit was unnecessary, but on the other hand,
23 as (inaudible) more claims, you know, I don't think it
24 necessarily would violate the consent order, but in any
25 event, even if it does, I don't think that vitiates it

because it would just simply require some corrective action that the City might have at its disposal, to avoid the case on the basis that I've indicated.

MR. KARSTEN: We've been trying to figure out where we go from here, as well, Your Honor --

THE COURT: Well, here's where I think you should go.

I would suggest that the only thing I have before me is the order to show cause, which solely relates to the enforcement of the prior consent order. At the moment, it doesn't seem to be necessary to do anything in that regard because apparently the town -- the City is in full contemplated compliance, and unless you tell me there's something that has been taken adversely to what I've been told from the other side of the aisle, in the way of preparation for the resolution of the matter, as of the first of July, then I don't see that there is any particular need for the Court to be involved in -- further, in that regard.

However, I would suggest further that the second lawsuit be held in abeyance, as far as any further action is concerned, at the moment, and what I would suggest is that through counsel, that Ms. Baldoni, on a confidential basis, so that it doesn't become a matter of great hoopla and press coverage,

# CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Stephen C. Bowles*     August 16, 2004

STEPHEN C. BOWLES

